Mary J. Leary, Admx. *vs.* United Electric Railways Co.

JUNE 25, 1924.

Present: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

SWEETLAND, C. J.   This is an action of trespass on the case for negligence brought by the plaintiff as administratrix of the estate of Michael T. Leary to recover for the death of said Michael, alleged to have resulted from injuries which he received by reason of the negligence of the defendant's servants.

The case was tried before a justice of the Superior Court sitting with a jury.   At the conclusion of the plaintiff's evidence the justice, on motion of the defendant, adjudged the plaintiff nonsuit.   The cause is before us upon the plaintiff's exception to this action of the justice.

The ground of the nonsuit was that upon the facts appearing in the plaintiff's evidence the plaintiff's intestate, as a matter of law, was himself guilty of negligence contributing to the accident.

In considering this exception the plaintiff is entitled to the support of all reasonable inferences favorable to her case which may be drawn from the evidence. The following facts may reasonably be found upon consideration of the transcript. On the afternoon of June 17, 1921, the weather being fair and the atmosphere clear, the plaintiff's intestate stood on the easterly sidewalk of Broad street, in Providence, near Oxford street, waiting for an opportunity to cross safely to the westerly sidewalk of Broad street. At this point the distance between the curbs on Broad street is about forty-four feet. In the center of the street are two car tracks of the defendant, five feet apart. To the east of the tracks is a roadway about twenty feet wide, on that day used by automobiles and other vehicles proceeding northerly toward the center of Providence. To the west of the tracks was a similar roadway used by vehicles proceeding southerly toward Pawtuxet. At the time in question the traffic on each of these roadways was congested, consisting largely of rapidly moving automobiles. After waiting for a time on the sidewalk Mr. Leary was able to pass with safety across the easterly roadway and into the space between the tracks of the defendant. He then found his passage across the westerly roadway blocked by the number of automobiles proceeding toward the south. He started to pass through them, but apparently considered it imprudent to do so, and stopped and stood between the tracks of the defendant as in a place of safety. At the time Mr. Leary left the easterly sidewalk no car of the defendant coming from either the north or the south was in sight to him, or at least was near the point of his crossing. Automobiles or other vehicles did not drive onto the space in the center of the street where the defendant's tracks and the space between them were located. As he thus stood in the center of the street waiting for an opportunity to pass with safety to the westerly sidewalk, an open car of the defendant approached him from the south, and a closed car of the defendant approached him from the north. When each car was from two hundred to

three hundred feet away from him he was seen by a passenger on the northbound car standing still between the defendant's tracks. He was turning his head and looking in each direction toward the approaching cars, and appeared to be apprehensive of his danger if neither car stopped. The cars did not stop but proceeded until they came opposite to each other at the place where Mr. Leary was standing. He was struck by the front lefthand corner of the southbound car, thrown against the side of the northbound car and thence to the ground. He sustained injuries from which he later died.

Shortly after the accident the motorman on each car stated to a lieutenant of police that he saw Mr. Leary standing in the center of the street between the car tracks. No doubt is cast upon this statement of the motorman on the northbound car, as there is nothing to indicate that he was not looking ahead. From the evidence, a finding would be warranted that the motorman on the southbound car did not see Mr. Leary, because the motorman's head was turned away from the front of the car; he was talking with a person standing in the vestibule of his car and remained in that position until his car struck Mr. Leary and he was not then aware that his car had struck anyone. He however told the lieutenant of police shortly after the accident that he did see Mr. Leary standing between the tracks and thought he was "intending to stand there until his car passed."

In the absence of public regulation Mr. Leary was within his legal right in leaving the sidewalk and crossing the easterly roadway. When he reached the center of the street and found himself in the emergency caused by his way of return to the east side and of advance to the west being barred by the dangerous congestion of moving automobiles, it can not be said as a matter of law that he was guilty of contributory negligence in waiting and standing in the center between the car tracks. Nor is the legal conclusion justified that either of the motormen of the defendant was free from negligence, which was the proximate cause of the

accident. The ordinances of the city of Providence provide that a motorman "shall at all times use every effort in his power to prevent" his car "from running against or afoul of any person" and shall keep a vigilant watch for all persons either on the track or moving in the direction of the track and shall on the appearance of danger to any person stop his car in the shortest time and space possible. Without such regulation by ordinance, a finding would be justified that reasonably prudent conduct would require such action on his part. It is doubtful if the motorman on the southbound car, by reason of gross negligence on his part, saw Mr. Leary. Each of them, however, claimed that he did see Mr. Leary standing between the tracks. It is true ordinarily, as this court has frequently said, that when a motorman sees a person ahead of him in a place of danger from which such person has ample time and opportunity to move to a place of safety before the car reaches him, the motorman has a right to assume that such person will do so, and the motorman is not called upon to act for such person's safety until it should be apparent to the motorman, as a reasonable man, that such person will not do so. If from all the circumstances the motorman should see that such person is caught in a trap from which he cannot extricate himself the principle which we have just stated would not be applicable. The dangerous predicament of Mr. Leary was apparent to other observers. It is a question of fact whether it should not have been apparent also to each of the motormen as a reasonable man. If it should, whether there was then sufficient time to permit either car to be stopped before it reached Mr. Leary can not be determined conclusively as a matter of law. It is a reasonable conclusion to draw from the evidence that if either car had stopped before it reached Mr. Leary the accident would have been averted. After Mr. Leary's peril should have been apparent to him either motorman who could have stopped before reaching Mr. Leary and failed to do so was guilty of negligence which was the proximate cause of the accident.

When the cars came opposite to each other the open space between them was narrowed to fifteen inches wide. A person of steady nerve and composure might perhaps stand in such a space between moving electric cars and escape without injury. The finding is warranted, however, that such a place is one of danger and one which a motorman would be required to appreciate as such. The plaintiff upon the exception before us is entitled to the benefit of any view which may fairly be taken of the evidence. While there is evidence that the motorman on the southbound car, through his inattention, failed to see Mr. Leary there is also his positive statement that he did and that he thought Mr. Leary was "intending to stand there until his car passed." Taking this statement to be true, the motorman must be held to have seen the car approaching from the south, and to appreciate that the two cars if each proceeded would come opposite to each other at the place where Mr. Leary was standing which would then be in a space fifteen inches wide. If it should be found that such a space in the circumstances would be a place of danger, then this motorman continued to run down upon Mr. Leary after he had reached the conclusion that Mr. Leary was intending to remain in this place, which might be one of peril, until his car reached him. Failing to stop in such circumstances would constitute negligence, the proximate cause of the accident, whatever might be found as to the conduct of Mr. Leary.

The granting of the nonsuit was error.

The plaintiff's exception is sustained. The case is remitted to the Superior Court for a new trial.

*Fitzgerald & Higgins, James H. Higgins, William H. Camfield,* for plaintiff.

*Clifford Whipple, Alonzo R. Williams,* for defendant.